**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

DRE HEALTH CORPORATION,

        Plaintiff,

v.

Case No. 4:21-cv-00936

TWO CANOES, LLC,

        Defendant.

**PLAINTIFF DRE HEALTH CORPORATION'S
SUGGESTIONS IN OPPOSITION TO TWO CANOES, LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

LEGAL STANDARD..................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.     This Court Has Personal Jurisdiction Over Two Canoes .................................. 2

       A.     The Parties Consented To Jurisdiction in the State of Missouri Because
              DRE's Additional Terms and Conditions are Enforceable.................................... 2

       B.     Personal Jurisdiction Exists Under Missouri's Long-Arm Statute and
              Comports with Due Process..................................................................................... 8

       C.     Dismissal is Improper ......................................................................................... 12

II.    DRE Properly Pleaded Fraud ........................................................................... 13

       A.     Two Canoes Pleaded the "Who," the "When," and the "What".......................... 13

III.   DRE Properly Pleaded Breach Of Contract..................................................... 14

       A.     Two Canoes Agreed to the Terms and Conditions Incorporated in the
              Purchase Order...................................................................................................... 14

       B.     The Parties Intended for Their Agreement to Include Hongray-
              Manufactured PPE ............................................................................................... 15

IV.    DRE Properly Pleaded a Claim for Breach of Good Faith and Fair Dealing ................. 16

       A.     DRE's Good Faith and Fair Dealing Claims are Supported by Missouri
              Case Law................................................................................................................ 17

V.     DRE Properly Pleaded UCC Violations .......................................................... 18

       A.     Two Canoes' Defects Were Not Visible Until Use ............................................. 18

       B.     DRE Sufficiently Alleged Breach of Warranty Claims....................................... 20

VI.    DRE Properly Pleaded Unjust Enrichment...................................................... 21

       A.     Unjust Enrichment Claims are Appropriate in the Absence of an Express
              Contract................................................................................................................. 21

CONCLUSION............................................................................................................ 23

# TABLE OF AUTHORITIES

**CASES**

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
    949 F.3d 417 (8th Cir. 2020) ...................................................................................................13

*Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*,
    464 S.W.3d 177 (Mo. 2015) ....................................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................16, 21

*Burcham v. Expedia, Inc.*,
    No. 4:07-CV-1963-CDP, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009)................................3, 14

*Burlington Indus., Inc. v. Maples Indus., Inc.*,
    97 F.3d 1100 (8th Cir. 1996) ..................................................................................................12

*Cap. Equip., Inc., v. CNH Am., LLC.*,
    394 F. Supp. 2d 1054 (E.D. Ark. 2005)..................................................................................12

*CIC Grp., Inc. v. Mitchell*,
    No. 4:10-CV-1789-MLM, 2010 WL 5184990 (E.D. Mo. Dec. 15, 2010) .................................3

*Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*,
    702 F.3d 472 (8th Cir. 2012) ....................................................................................................8

*Dixon v. Sommers*,
    No. 09-0812-CV-W-ODS, 2011 WL 13176826 (W.D. Mo. Feb. 3, 2011)................................4

*Farmers Edge Inc. v. Farmobile*,
    LLC, 970, 1031 F.3d 1027 (8th Cir. 2020)..............................................................................22

*Fastpath, Inc. v. Arbela Techs. Corp.*,
    760 F.3d 816 (8th Cir. 2014) ......................................................................................1, 8, 9, 11

*Foster v. Walmart, Inc.*,
    15 F.4th 860 (8th Cir. 2021) .................................................................................................6, 7

*Guilford v. Bos. Sci. Corp.*,
    No. 4:19-CV-00955-DGK, 2020 WL 1668279 (W.D. Mo. Apr. 3, 2020) ...............................20

*Hill v. Wyeth, Inc.*,
    No. 4:03-CV-1526-JCH, 2007 WL 674251 (E.D. Mo. Feb. 28, 2007) ...................................21

*Howard v. Turnbull*,
    258 S.W.3d 73 (Mo. Ct. App. 2008)........................................................................................23

*Hutchinson Utilities Comm'n of City of Hutchinson v. Curtiss-Wright Corp.*,
    775 F.2d 231 (8th Cir. 1985) ..................................................................................................20

*In re Holl*,
    925 F.3d 1076 (9th Cir. 2019) ..................................................................................................6

*Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc.*,
    204 S.W.3d 183 (Mo. Ct. App. 2006).......................................................................................8

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011)...............................................................................................................3, 9

*J.F. Daley Int'l, Ltd. v. Midwest Container & Indus. Supply Co.*,
    849 S.W.2d 260 (Mo. Ct. App. 1993).....................................................................................19

*Jake C. Byers, Inc. v. J.B.C. Investments*,
    834 S.W.2d 806 (Mo.App. E.D.1992).....................................................................................15

*Johnson v. Woodcock*,
    444 F.3d 953 (8th Cir. 2006) ..................................................................................................11

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
    648 F.3d 588 (8th Cir. 2011) ..................................................................................1, 8, 10, 11

*Lowe v. Hill*,
    430 S.W.3d 346 (Mo. Ct. App. 2014)......................................................................................23

*Meardon v. Reg.*,
    994 F.3d 927 (8th Cir. 2021), reh'g denied (May 26, 2021) ...................................................21

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*,
    648 F.3d 258 (5th Cir. 2011) ....................................................................................................6

*Route App, Inc. v. Heuberger*,
    No. 2:22-CV-291-TS-JCB, 2022 WL 2316377 (D. Utah June 28, 2022) .................................7

*Rydholm v. Equifax Info. Servs. LLC*,
    No. 20-3425, 2022 WL 3364952 (8th Cir. Aug. 16, 2022) .....................................................14

*Salameno v. Gogo*,
   No. 16-CV-487, 2016 WL 4005783 (E.D.N.Y. July 25, 2016)................................................7

*Sanger v. Yellow Cab Co., Inc.*,
   486 S.W.2d 477 (Mo. banc 1972)............................................................................................5

*Shoremaster, Inc. v. Hanson Marine Properties*,
   No. 09-1099-CV-W-FJG, 2010 WL 1752160 (W.D. Mo. May 3, 2010)..............................2, 3

*Smith Flooring, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*,
   713 F.3d 933 (8th Cir. 2013)...................................................................................................15

*State ex rel. Hewitt v. Kerr*,
   461 S.W.3d 798 (Mo. 2015)......................................................................................................7

*Steelhead Townhomes, L.L.C. v. Clearwater 2008 Note Program, LLC*,
   537 S.W.3d 855 (Mo. Ct. App. 2017)......................................................................................23

*Steinbuch v. Cutler*,
   518 F.3d 580 (8th Cir. 2008) .........................................................................................9, 10, 12

*Tennessee Rand, Inc. v. Gestamp Washtenaw, LLC*,
   No. 1:20-CV-02433, 2021 WL 424299 (N.D. Ohio Feb. 8, 2021),
   reconsideration denied, No. 1:20-CV-02433, 2021 WL 4812346 (N.D. Ohio
   Mar. 19, 2021)...........................................................................................................................6

*Two Canoes LLC v. Aobvious Studio LLC*,
   2:21-cv-19729 (D.N.J.)............................................................................................................12

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*,
   441 F.3d 552 (8th Cir. 2006) ...................................................................................................14

*Wen-Park Logistics, Inc. v. Two Canoes, LLC*,
   21-CI-004795 (Jeff. Cty. Ct. Ky.)............................................................................................12

*Whelan Sec. Co. v. Allen*,
   26 S.W.3d 592 (Mo. Ct. App. 2000)..........................................................................................3

**STATUTES**

MO Rev. Stat.
   § 400.2-513, UCC Comment 3 .................................................................................................19
   § 400.2-608 (2018)....................................................................................................................19

## OTHER AUTHORITIES

Bruner & O'Connor on Construction Law
  § 3:64 ...................................................................................................................................4, 15

Federal Rule of Civil Procedure 9(b).......................................................................................13, 14

Federal Rule of Civil Procedure 12 ....................................................................................2, 12, 16

Plaintiff DRE Health Corporation ("DRE") hereby submits its Response and Opposing Suggestions to the Motion to Dismiss filed by Defendant Two Canoes, LLC ("Two Canoes") (hereinafter the "Motion").

## LEGAL STANDARD

"To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of pe21-cirsonal jurisdiction over the challenging defendant." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted). Evidence and pleadings must be viewed in the "light most favorable to the plaintiff" and the Court should "resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011).

## ARGUMENT

Defendant Two Canoes and Plaintiff DRE (hereinafter the "Parties") entered into a multimillion-dollar contract for the sale of medical gloves. The Parties memorialized their contract in a purchase order which, as is customary, incorporated certain terms and conditions. The Parties understood and agreed that the gloves to be provided to DRE by Two Canoes would be Hongray brand—the gold-standard in medical gloves. Illustrating that Two Canoes fully understood that DRE was purchasing and contracting for Hongray gloves, Two Canoes took pains to deliver the gloves in boxes carefully, albeit fraudulently, labelled Hongray. Unfortunately, DRE's end customer later determined the gloves were counterfeit—cheap gloves not fit for their intended use that were masquerading as Hongray gloves. Remarkably, Two Canoes now tries to run from its agreement, actually claiming that it did not know that Hongray gloves were required, ***even though that is precisely what it purported to provide***. And Two Canoes audaciously claims that it took too long for DRE to catch this intricate fraud and that, therefore, DRE somehow waived its claim. According to Two Canoes, because Two Canoes did

such a good job concealing the fact that the gloves were fakes, DRE is out of luck and should not have any recourse or remedy for these cheap counterfeits. That is quite obviously not the law; the law does not protect a savvy counterfeiter.

Two Canoes also claims that the purchase order that it agreed to is not binding and that this Missouri court lacks jurisdiction even though the Parties' contract clearly states that the proper forum is Missouri and the proper law is Missouri law. Two Canoes has dodged answering for this fraud long enough—it is time for discovery to begin.

Under Rule 12, facts are taken as they are found in the Plaintiff's Amended Complaint. Here, such facts adequately plead plausible jurisdiction as well as various actions under Missouri law. Accordingly, Two Canoes' Motion should be denied.

## I. THIS COURT HAS PERSONAL JURISDICTION OVER TWO CANOES

Defendant Two Canoes argues that this Court lacks personal jurisdiction over it even though it entered into a contract to sell products to a Missouri corporation where the contract stated Missouri is the proper forum for any dispute. By signing a contract stating that Missouri is the proper forum for any dispute, Two Canoes consented to jurisdiction in this forum and waived any argument to the contrary. But, even if the Court were to decide that the forum selection clause is somehow unenforceable, the Court should still find that exercising jurisdiction is appropriate since the elements of Missouri's long-arm statute are satisfied in this matter.

### A. The Parties Consented To Jurisdiction in the State of Missouri Because DRE's Additional Terms and Conditions are Enforceable

It is well-established under Missouri law that a party may consent to jurisdiction in Missouri through a forum selection clause, in which case minimum contacts need not be shown. *See, e.g.*, *Shoremaster, Inc. v. Hanson Marine Properties*, No. 09-1099-CV-W-FJG, 2010 WL 1752160, at *2 (W.D. Mo. May 3, 2010) ("Although it is generally necessary to satisfy the

Missouri long-arm statute to obtain personal jurisdiction over a nonresident defendant, jurisdiction over the person may also be obtained by consent or by waiver. . . . If such a showing is made, plaintiff does not have to proceed with the due process, i.e. minimum contacts, analysis." (citations omitted)); *CIC Grp., Inc. v. Mitchell*, No. 4:10-CV-1789-MLM, 2010 WL 5184990, at *2 (E.D. Mo. Dec. 15, 2010) ("Missouri courts hold that 'jurisdiction over the person may be [ ] obtained by consent or by waiver'. . . . Under such circumstances, the party invoking the forum selection clause need not 'show minimum contacts.'" (citation omitted)); *Whelan Sec. Co. v. Allen*, 26 S.W.3d 592, 595 (Mo. Ct. App. 2000) (same). This is because state and federal courts in Missouri, similar to courts elsewhere, have repeatedly held that personal jurisdiction is an "individual right capable of being waived" through a forum selection clause. *Shoremaster, Inc.*, 2010 WL 1752160, at *2, *CIC Grp., Inc.*, 2010 WL 5184990, at *2, *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (stating that parties may agree to personal jurisdiction in a forum through their consent).

To determine whether a forum selection clause is applicable and enforceable, courts review the clause in accordance with "traditional principles of contract law." *Burcham v. Expedia, Inc.*, No. 4:07-CV-1963-CDP, 2009 WL 586513, at *2 (E.D. Mo. Mar. 6, 2009) (citation omitted). Even in matters where the agreement containing the forum selection clause is set forth online, courts have made clear that "[f]ailure to read an enforceable online agreement, 'as with any binding contract, will not excuse compliance with its terms.'" *Id.* (citation omitted).

Here, the Parties agreed that "the court in Missouri, USA shall have exclusive jurisdiction in the first instance" over "any and all disputes" related to the sale of the PPE by Two Canoes. (*See* ECF # 22 (hereinafter "Amend. Complaint"), Exhibit C, Art. 21.). Likewise, the choice-of-law provision established that the Parties' agreement would be "governed by the laws of the state

of Missouri." *Id.* Two Canoes appears to concede that its agreement with DRE is governed by Missouri law in accordance with that choice-of-law provision. (*See* Motion, at pg. 16–24.) Just as the Parties agreed Missouri law would govern their disputes, they likewise agreed that the courts of Missouri would have jurisdiction over the same.

DRE never buried these and other relevant terms or conditions. Rather, the documents attached to its Complaint show that the terms were front-and-center in DRE's negotiations with Two Canoes. For example, DRE's invoices to Two Canoes placed the reference and link to the additional terms and conditions in the *same paragraph* as the rest of its proposed terms in its purchase orders to Two Canoes under the unambiguous header, "Terms":

> P.O. Number: 278179
> Invoice (QUOTE) Number: N/A
> Terms: 100% payment will be remitted immediately upon DRE's satisfactory inspection of the products at DHL's bonded warehouse in China. DRE Health requests this facility's address and point of contact for our staff to validate the existence of the goods ASAP as well as either an inventory manifest from DHL, a video of live products, or video call showing the product exists in inventory 11/6 CN AM. Shipping terms are EXW DHL CHINA BONDED WAREHOUSE. Additional terms as outlined in purchase terms & conditions available at www.drehealth.com.

(Amend. Compl., Exhibit A.) Dre and Two Canoes are sophisticated companies engaging in international trade and commerce. Incorporating external terms and conditions by reference is common – and, like here, often includes electronic terms or conditions. *See* Bruner & O'Connor on Construction Law, § 3:64 ("Incorporation by reference can include not only referenced paper documents but electronic documents as well."); *see also Dixon v. Sommers*, No. 09-0812-CV-W-ODS, 2011 WL 13176826, at *3 (W.D. Mo. Feb. 3, 2011) ("In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract." (citation omitted)). Two Canoes clearly read and inspected these terms proposed by

DRE during negotiations: Two Canoes rejected some of those terms in its own invoice. (Amend. Complaint ¶¶ 50–58.) In this case, Two Canoes rejected not just price terms proposed by DRE but also specifically rejected proposed different payment terms. (*Id.*) During the course of negotiations, DRE also sent a final Purchase Order confirming the agreement of the Parties and incorporating DRE's final offers in both price and non-price terms. (*See id.* ¶¶ 58–61.)

All of DRE's purchase orders explicitly stated that its additional terms and conditions applied, provided a link to access such terms, and further placed notice of the same in the same "Terms" section on the first page if its purchase orders. (*Id.*, Exhibit A.) Moreover, DRE's email communications with Two Canoes always included a "DISCLAIMER" in capital letters. Such DISCLAIMER included, again, notice that DRE "expressly" rejected any terms and conditions of the seller not explicitly included in DRE's offer of purchase, provided notice that all DRE offers were contingent on the application of DRE's additional terms and conditions, and provided a link to the website where DRE's additional terms could be reviewed. (*See, e.g., id.*, Exhibit D.)

Two Canoes claims it had no reasonable notice of an "online agreement" and argues that DRE never provided reasonable notice of the terms at best or, at worst, intentionally obscured its additional terms for "tactical advantage." (Motion, at 6–10.) In support, Two Canoes attaches exhibits attesting that its officers cannot be bothered to read purchase orders for goods and suggesting its officers become easily lost while navigating websites. These propositions are absurd and have no bearing as to whether DRE's additional terms are incorporated into the agreement of the Parties. A contracting party's "failure to read or understand a contract is not, standing alone, a defense to the contract." *See Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 481 (Mo. banc 1972). The fact is, the terms and conditions were plainly incorporated. Indeed,

these same terms and conditions have been incorporated against other parties with whom DRE is litigating in Missouri, none of whom challenged their applicability. *See, e.g.*, *DRE Health Corp. v. BRM Trades, LLC*, 4:21-cv-00745 (W.D.M.O.); *DRE Health Corp. v. Berkeley Equity Ltd.*, 4:22-cv-00031 (W.D.M.O.).

While Two Canoes spends pages and pages discussing "browsewrap" or "click-through" agreements, (Motion, at 7–11), that is not what is at issue in this matter. Here, the Parties never entered into a "browsewrap" or "click-through" agreement;[1] they instead incorporated additional terms by reference into a simple purchase order that made no other references to quality, indemnification, or other topics that business entities frequently negotiate, especially in multimillion-dollar orders for medical equipment. This is a critical difference. Numerous courts across the country have held in factually analogous matters that contracts are not any less valid for including online terms and conditions by reference. *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) ("We note that other courts, applying traditional contract principles . . . have expressly or implicitly rejected the very argument that Tubal–Cain makes here, recognizing, for instance, that 'internet provisions clearly incorporated by reference [into a purchase order], readily available on the identified internet site, and plainly and clearly set forth therein,' are binding even where the party has not read them." (citations omitted)); *In re Holl*, 925 F.3d 1076, 1083–84 (9th Cir. 2019) (denying writ of mandamus and letting stand a district court order holding an arbitration clause was enforceable in a contract that incorporated by reference online terms and conditions even though locating those terms and conditions required 'several steps and a fair amount of web-browsing intuition.'"); *Tennessee*

---

[1] *See Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021) (defining a "clickwrap" arrangement as an internet agreement that "requires the user to explicitly assent by clicking 'I agree' (or something similar) before using the website or purchasing a product" and a "browsewrap" arrangement as an internet agreement that "imputes assent through the user's performance of some specific act" (such as use of a website)).

*Rand, Inc. v. Gestamp Washtenaw, LLC*, No. 1:20-CV-02433, 2021 WL 424299, at *2 n.2 (N.D. Ohio Feb. 8, 2021), reconsideration denied, No. 1:20-CV-02433, 2021 WL 4812346 (N.D. Ohio Mar. 19, 2021) (disposing with argument similar to the argument raised by Two Canoes in the span of a footnote).

And, unlike the parties involved in the "clickwrap" and "browsewrap" cases cited by Two Canoes, Two Canoes and DRE are experienced and sophisticated business organizations operating in the field of international trade, not individual consumers inept at negotiating commercial contracts or quickly clicking through screens while trying to access music videos. Courts have often held that sophisticated parties such as Two Canoes cannot claim an agreed-upon contract fails for lack of notice simply because that contract contained online terms. *See, e.g.*, *Route App, Inc. v. Heuberger*, No. 2:22-CV-291-TS-JCB, 2022 WL 2316377, at *5 (D. Utah June 28, 2022) (finding forum clause contained on website enforceable in matter where "[Defendant] is not a lay internet user, rather, he is a sophisticated e-commerce business person well-seasoned in how hyperlinks work."); *Salameno v. Gogo*, No. 16-CV-487, 2016 WL 4005783 (E.D.N.Y. July 25, 2016) (finding a combination of a clickwrap and sign-in-wrap agreement enforceable in matter involving sophisticated internet users).[2]

Additionally, DRE incorporated its additional terms and conditions by reference in *every* purchase order and email sent to Two Canoes, precisely as anticipated by Missouri law. Under Missouri law, "[t]erms not explicit in a contract may be incorporated into the contract by reference." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 810 (Mo. 2015) (citations omitted).

---

[2]      To the extent there is a dispute as to whether the Purchase Order provided the notice necessary for mutual assent to be established, such a dispute cannot be resolved this early in litigation. Binding Eighth Circuit case law, also cited by Plaintiff, establishes the same. See *Foster*, 15 F.4th at 864 ("The district court got ahead of itself when it concluded, on this 'meager record[ ],' that inquiry notice was absent. . . . As we have recognized, the existence of mutual assent is generally a 'factual question' that is resolvable at this stage only if the material facts are not in dispute.'").

Items incorporated by reference are equal parts of a contract "as if they had been set out in the contract *in haec verba*." *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc*., 204 S.W.3d 183, 196 (Mo. Ct. App. 2006). That is what happened here when the Parties, sophisticated business entities, agreed to a forum selection clause—which is part and parcel of virtually every purchase order ever signed. The mere fact that the forum selection clause appears by way of incorporation and not in the text of the intentionally short and clear purchase order does not in any way change the fact that it was plainly incorporated and that Two Canoes agreed to the clause.

### B.  Personal Jurisdiction Exists Under Missouri's Long-Arm Statute and Comports with Due Process

As discussed, the Parties here explicitly agreed to the jurisdiction of Missouri's courts over any dispute. But, even without that explicit agreement, there would still be personal jurisdiction here over Two Canoes under Missouri's long-arm statute which provides for jurisdiction "over any person or firm as to any cause of action arising from, among other things, that person or firm's transaction of any business within this state or making of any contract within this state." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc*., 702 F.3d 472, 475 (8th Cir. 2012) (quotations and citations omitted).

Federal courts may exercise personal jurisdiction in diversity actions to the same "extent permitted by the long-arm statute of the forum state and by the Due Process Clause*." K-V Pharm. Co.*, 648 F.3d at 592. Missouri "intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause." *Id.* (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 593 (8th Cir. 2011)). Therefore, this Court's "inquiry is limited to whether the exercise of personal jurisdiction comports with due process." *Fastpath, Inc.,* 760 F.3d at 820 (stating that only the Due Process Clause defines outer

bounds of jurisdiction where state's long-arm statute authorizes personal jurisdiction to the Constitution's utmost limit).

Consistent with the Due Process Clause, persons "may submit to a State's authority in a number of ways." *J. McIntyre Mach., Ltd.*, 564 U.S. at 880. As discussed above, parties may submit to a state's jurisdiction by "explicit consent." *Id.* But even without such explicit consent—and even where a person has not physically entered the jurisdiction of the forum state—parties submit themselves to the judgment of a state's courts where disputes "arise out of or are connected with activities within the state." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). In such cases, the Due Process Clause requires only "that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Fastpath*, 760 F.3d at 820 (citations omitted). Such contacts exist when a defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quotations omitted). Jurisdiction, however, is a "a question of authority rather than fairness," meaning that "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *J. McIntyre Mach., Ltd.*, 564 U.S. at 883. This Court considers five factors in weighing the sufficiency of a defendant's minimal contacts with a forum state: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). Here, all five factors weigh in favor of a determination that Two Canoes has sufficient minimum contacts with the state of Missouri such that personal jurisdiction is established.

The Eighth Circuit has held the first three factors listed above are of "primary importance." *Id.* And, similar to *K-V Pharmaceutical Co.*, which was decided in the Eighth Circuit, all three of these factors weigh in favor of establishing personal jurisdiction here.

In analyzing the first two factors, which relate to the nature, quality, and quantity of the defendant's contacts with the forum state, the court in *K-V Pharmaceutical Co.* found the following contacts purposeful: (1) the defendant contacted plaintiff several times to negotiate the contract prior to signing, (2) the defendant made payments to the plaintiff pursuant to the underlying contract, and (3) the parties entered into a choice-of-law provision stating that the "Agreement shall be deemed to have been entered into and shall be governed by and construed under the laws of the State of Missouri." *K-V Pharm. Co.*, 648 F.3d at 593–94. Here, nearly identical contacts occurred. First, the parties engaged in extensive discussions by email and phone regarding the purchase order prior to executing, particularly with regard to pricing and financing. (*See* Amend. Compl., Exhibit D.) Two Canoes was fully aware during these discussions that DRE was based in Missouri; Isaac Bawany, CEO of DRE, even provided documents evidencing that fact to Two Canoes by email, including DRE's 2020 Third Quarter Financial Report, DRE's Company Profile, and DRE's W-9. (*See id.,* Exhibit D at 4.) Second, as in *K-V Pharm Co.*, DRE remitted funds to Two Canoes pursuant to the purchase order. (*See id.*, Exhibit B.)[3] And lastly, again similar to the parties in *K-V. Pharm Co.,* Two Canoes and DRE agreed to a Missouri choice-of-law provision—the applicability of which is not in dispute. (*See id.*, Exhibit C., Art. 21.). Further, these contacts were not "one-off" events. Mesh Gelman, the CEO of Two Canoes, even admitted to the Court that a month after signing the purchase order

---

[3]     Unlike in *K-V Pharm. Co*, the funds here were transmitted by the plaintiff to the defendant. Ultimately, however, this distinction is insignificant as the very fact that funds were transmitted to Two Canoes by DRE, a company based in Missouri, makes it more likely that Two Canoe would "reasonably anticipate being haled into court in Missouri in the event of an alleged breach." *K-V Pharm. Co.*, 648 F.3d at 594.

with DRE, he flew "to Missouri to tour [DRE Health's] mask manufacturing factory, [to] see [DRE Health's] business[,] and [to] discuss the possibility of doing business together in the future." (*See* Motion, Exhibit 1 ¶ 18.) Such contacts are far from the "incidental" contacts courts have deemed insufficient to establish minimum contacts. *Fastpath, Inc.*, 760 F.3d at 824.

Further, the third factor (the relationship of the cause of action to the contacts) also weighs in favor of finding the minimum contacts requirement satisfied. As the court in *K-V Pharm. Co.* acknowledged, the third factor weighs in favor of finding personal jurisdiction where the claims asserted "are related to the contacts that [the defendant] had with Missouri." *K-V Pharm. Co.*, 648 F.3d at 594. Here, where DRE Health is pursuing claims strictly related to the contract it entered into with Two Canoes, this factor weighs in favor of establishing personal jurisdiction as well. *See id.* (finding the third primary factor weighs in favor of establishing personal jurisdiction where "[plaintiff's breach-of-contract and misappropriation-of-trade-secrets claims are related to . . . [a] contractual relationship [between the parties]").

The remaining two factors, which refer to the interests of the forum state and the convenience of the parties, "carry less weight and are not dispositive." *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006). But, these factors also weigh in favor of establishing personal jurisdiction. Since DRE is a Missouri corporation with a principal place of business in Kansas Missouri, (Motion ¶ 1), the state of Missouri has a particularized interest in the outcome of this litigation. *See K-V Pharm. Co.*, 648 F.3d at 595 ("As to the fourth factor, Missouri obviously has an interest in providing a forum for resident corporations like [Plaintiff]."). And, continuing to litigate in Missouri is, on balance, convenient for the parties. As acknowledged by Plaintiffs, DRE is involved in several other suits related to breach of contracts. (*See* Motion, at 2 n.1 ("A cursory review of online dockets reveals that DRE is currently involved in at least 4 other cases

involving contractual counter-parties in state and federal courts in Missouri alone.")). Litigating all of these claims in one forum will allow DRE to "benefit from some economies of scale, such as avoiding duplicative discovery and litigation costs." *Cap. Equip., Inc., v. CNH Am., LLC.*, 394 F. Supp. 2d 1054, 1058 (E.D. Ark. 2005). Further, Two Canoes, which is a Delaware limited liability company, has repeatedly litigated cases outside of its home state. *See, e.g.*, *Two Canoes LLC v. Aobvious Studio LLC*, 2:21-cv-19729 (D.N.J.), *Wen-Park Logistics, Inc. v. Two Canoes, LLC*, 21-CI-004795 (Jeff. Cty. Ct. Ky.). The existence of such actions shows that Two Canoes likely will not be inconvenienced in litigating outside of its home state. *See Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1103 (8th Cir. 1996) ("We note that [Plaintiff] has previously commenced an action in South Carolina on a similar claim of trade secret protection. This fact suggests that [Plaintiff] will not be inconvenienced by suit beyond its corporate home.").

### C.    <u>Dismissal is Improper</u>

Given DRE's allegations, dismissal for lack of personal jurisdiction over Two Canoes is improper. At a minimum, this Court should allow jurisdictional discovery sufficient to adduce whether Two Canoes' agents conducted business in Missouri through their contractual relationships or, barring the existence of an enforceable contract, whether the tortious conduct alleged created jurisdiction over Two Canoes due to its actions towards its Missouri victim DRE. *See Steinbuch*, 518 F.3d at 589 (remanding for jurisdictional discovery where district court had stayed discovery pending the resolution of Rule 12 motions). Although DRE believes that it has submitted sufficient documentary evidence about Two Canoes' contacts with Missouri, should this Court disagree with DRE, DRE should be "[p]ermitted to take some jurisdictional discovery to establish whether general personal jurisdiction would be justified." *Id.* (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 n.1. (8th Cir. 2004)).

## II.    DRE PROPERLY PLEADED FRAUD

Two Canoes next alleges that DRE's cause of action for fraud should be dismissed because it is not pled with the particularity required under Federal Rule of Civil Procedure 9(b). (Motion, at 16). Specifically, Two Canoes argues DRE failed to provide information as to "who" committed the alleged fraud, "when" the fraud occurred, or "'what' the fraudulent misrepresentation was." (*Id.* at 17).

### A.    Two Canoes Pleaded the "Who," the "When," and the "What"

A complaint alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The complaint must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020) (quoting *Schaller Tel. Co. v. Golden Sky Sys. Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)).

Contrary to Two Canoes' suggestions, the Amended Complaint provides sufficient information regarding the alleged fraud to survive the particularity standard of Federal Rule of Civil Procedure 9(b). As alleged in the Amended Complaint, Two Canoes, a business entity, committed fraud by assuring DRE that it would provide gloves manufactured by Hongray when, in fact, the gloves it provided were counterfeit.[4] (Amend. Compl. ¶¶ 77, 78.) Further, the Amended Complaint alleges these representations were made in or around November 2020 as part of the Parties' negotiations. (*Id.* ¶¶ 44–46.) And, the Amended Complaint asserts the counterfeit and defective goods were received by DRE in shipments between November 2020 and January 2021. (*Id.* ¶ 80.)

---

[4]    As evidenced by the Exhibits to the Amended Complaint, these representations were made by Ari Brown to Isaac Bawany of DRE . (Amend. Comp., Exhibit D.)

Under Eighth Circuit case law, a plaintiff pleading a fraud claim need not plead every possible detail regarding that claim. *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) ("[N]either this court nor Rule 9(b) requires [Plaintiff] to allege specific details of every alleged fraudulent claim forming the basis of [his] complaint."). Rather, Rule 9(b) requires plaintiffs to "provide some representative examples of [the defendant's] alleged fraudulent conduct" such that the defendant may "respond specifically to [the defendant's] allegations." *Id.* That standard is certainly met in this matter, where DRE included extensive details in the Amended Complaint regarding the fraud committed by Two Canoes.

## III.    DRE PROPERLY PLEADED BREACH OF CONTRACT

This Court must "[a]ccept the factual allegations in the [amended] complaint as true and draw all reasonable inferences in the plaintiff's [DRE's] favor." *Rydholm v. Equifax Info. Servs. LLC*, No. 20-3425, 2022 WL 3364952, at *1 (8th Cir. Aug. 16, 2022) (citing *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014)). Here, DRE pleaded that it contracted with Two Canoes to purchase vinyl examination gloves manufactured by Hongray to fulfill its obligation to a customer who requested Hongray gloves in particular. (Amend. Compl. ¶ 43). And, in doing so, DRE sufficiently pleaded that Two Canoes breached that contract by providing goods that were defective, counterfeit, mislabeled, and unfit for use. (*Id.* ¶¶ 99, 100, 101, 117.)

### A.    Two Canoes Agreed to the Terms and Conditions Incorporated in the Purchase Order

Two Canoes asserts that DRE's Second, Third, and Sixth causes of action should be rejected because those claims rely on the terms and requirements contained in the Terms and Conditions. But, for the reasons set forth above in Section II.B., the Terms and Conditions agreed to by Two Canoes cannot be discarded simply because those clauses were incorporated into the purchase order by reference. *See Burcham*, 2009 WL 586513, at *2 (stating that

"[f]ailure to read an enforceable online agreement, 'as with any binding contract, will not excuse compliance with its terms'" (citation omitted)); Bruner & O'Connor on Construction Law, § 3:64 ("Incorporation by reference can include not only referenced paper documents but electronic documents as well."). Accordingly, Two Canoes must be held responsible for violating those contractual provisions.

## B. The Parties Intended for Their Agreement to Include Hongray-Manufactured PPE

Next, although Two Canoes does not dispute that it entered into a contract to sell gloves to DRE, Two Canoes asserts that all of DRE's breach of contract claims are fatally deficient as the purchase order does not directly reference Hongray gloves. (Motion, at 18–19). Perhaps as an attempt to forestall a response by DRE, Two Canoes then dives into the complexities of the parol evidence rule before making the bold assertion before discovery has commenced that, under the parol evidence rule, "none of DRE's allegations that Two Canoes orally agreed to sell Hongray gloves to DRE can be considered part of the Purchase Order." (*Id.* at 19).

However, the parol evidence rule is complicated and contains numerous exceptions. *See Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 812 (Mo.App. E.D.1992) (describing the parol evidence rule as "a deceptive maze rather than a workable rule"). For example, the parol evidence rule applies only to "*unambiguous* and *completely integrated* written agreement[s]." *Smith Flooring, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 938 (8th Cir. 2013) (citation omitted) (emphasis added). And, even if the underlying contract is unambiguous and completely integrated, the parol evidence rule contains numerous exceptions, including for "mutual mistake, accident, or erroneous omission." *Id.* (citation omitted).

At this time in the litigation, before discovery has commenced, it is simply too early to resolve DRE's breach of contract claims under the parol evidence rule. First, as evidenced by

Two Canoes' Motion, the Parties dispute the very nature of the purchase order. Accordingly, Two Canoes cannot also assert the contract is "unambiguous." *Id.* Second, the Terms and Conditions incorporated in the purchase order require the "Suppler" (here Two Canoes) to "guarantee the delivered goods are: original and originating from the manufacturer and/or IP right holder stated on the packaging and labels . . . as well as in accordance with the quality intended by said manufacturer." (*See* Amend. Compl., Exhibit C, Art. 10). And, as DRE alleged in the Amended Complaint, although all of the products "supplied by Two Canoes were packaged and labeled to clearly state they were produced by Hongray . . . Hongray PPE were intermixed and interspersed with defective and counterfeit Hongray PPE products." (*Id.* ¶ 98). Thus, even if the parol evidence rule applied, because DRE has sufficiently alleged that Two Canoes violated the terms of the purchase order by providing counterfeit and mislabeled goods, the parol evidence does not bar DRE's breach of contract claims. Lastly, and as set forth above, DRE would argue the Parties entered into an implied contract for Hongray gloves if evidence were introduced that the express contract was fatally flawed. In that instance, where DRE would assert claims under an implied contract instead of an express contract, DRE would not be barred from pursuing breach of contract claims under the parol evidence rule.

Ultimately, when the facts as pled by DRE are accepted as true and all reasonable inferences are drawn in DRE's favor, DRE meets its burden to survive a FRCP 12(b)(6) motion to dismiss for failure to state a claim with respect to its breach of contract claims, given that DRE has stated such claims for relief that are plausible on their face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotations omitted).

## IV. DRE PROPERLY PLEADED A CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING

Two Canoes then argues that DRE's good faith and fair dealing claim must be dismissed as "neither the Purchase Order nor the Two Canoes Invoice mention 'Hongray.'" (Motion, at

20). Essentially, Two Canoes argues this claim must be dismissed "for alleging that Two Canoes violated a contract provision that does not exist." (*Id.*).

### A. DRE's Good Faith and Fair Dealing Claims are Supported by Missouri Case Law

First, and most critically, Two Canoes misconstrues the law in this area. The Missouri Supreme Court has held "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*, 464 S.W.3d 177, 185 (Mo. 2015) (citations omitted). Two Canoes interprets this language as indicating that because "neither the Purchase Order nor the Two Canoes Invoice mention 'Hongray,'" Two Canoes cannot be found liable for violating Missouri's covenant of good faith and fair dealing. (Motion, at 20). But, Two Canoes misreads the case law. Parties to a contract are only able to avoid the covenant of good faith and fair dealing under this line of case law if their actions were "*in accordance with the express terms of the contract*." *Arbors at Sugar Creek Homeowners Ass'n* 464 S.W.3d at 185. Unsurprisingly, the Parties did not expressly agree that Two Canoes could provide counterfeit or defective goods to DRE to fulfill the purchase order. Since such behavior was not expressly permitted by the terms of the contract, Two Canoes cannot claim its actions were "in accordance with the express terms of the contract." *Id.*

Second, by delivering counterfeit goods marked as produced by Hongray, Two Canoes violated the express terms of the agreement. (*See* Amend. Compl., Exhibit C, Art. 10 ("The Supplier shall guarantee that the delivered goods are: original and originating from the manufacturer and/or IP right holder stated on the packaging and labels . . . as well as in accordance with the quality intended by said manufacturer.")). Thus, even under the

interpretation of Missouri case law provided by Two Canoes, DRE's good faith and fair dealing claim should not be dismissed since Two Canoes' actions violated the express terms of the contract.

## V. DRE PROPERLY PLEADED UCC VIOLATIONS

Two Canoes next asserts that it cannot be held liable under the UCC because: (1) DRE did not discover that the products were counterfeit until time had passed and (2) DRE has not sufficiently identified warranties on which it relied. Neither argument has merit.

### A. Two Canoes' Defects Were Not Visible Until Use

Two Canoes brazenly seeks to use its own sale of counterfeit product sold in sealed boxes labeled as "Hongray" brand as a shield, claiming that it took DRE too long to discover that the product was counterfeit and fraudulently labeled and, therefore, DRE is out of luck. That is not only contrary to law, it is utterly preposterous to suggest that the victim of Two Canoes' fraud could or should be punished for the fact that Two Canoes successfully concealed the fraud for some period of time.

In any event, when defects are intentionally concealed until use, a customary inspection does not eliminate all warranties under Missouri's UCC.

Missouri's UCC provides:

> Revocation of acceptance in whole or in part.—(1) ***The buyer may revoke his*** acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) ***without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.*** (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it. (3) A buyer

> who so revokes has the same rights and duties with regard to the
> goods involved as if he had rejected them.

MO Rev. Stat. § 400.2-608 (2018) (emphasis added). In *J.F. Daley*, the court found that

the plaintiff's "[i]nitial acceptance . . . was prior to discovery of the defects and was

reasonably induced by the difficulty of discovery." *J.F. Daley Int'l, Ltd. v. Midwest

Container & Indus. Supply Co.,* 849 S.W.2d 260, 264 (Mo. Ct. App. 1993). The court

referred to the defendant's testimony that "[c]onceded that it was impossible to detect the

defects in the bottles by a visual inspection." *Id.* The court held that "[w]hether

acceptance was induced by 'difficulty of discovery' within the meaning of § 400.2-

608(1)(b) or 'should have been discovered' within the meaning of § 400.2-608(2) is a

**question of fact** to be determined by the trial court." *Id.* (emphasis added). Further, the

court held that the determination of whether the seller should have performed a certain

test (or inspection) "[r]equires a consideration of the facts and circumstances of the

particular case." *Id.*; *see also* MO Rev. Stat. § 400.2-513, UCC Comment 3.

DRE had the right to revoke acceptance without discovery of the counterfeit nature of the

gloves provided by Two Canoes, given that DRE's acceptance was reasonably induced both by

the seller's assurances and the difficulty of discovery of the counterfeit nature of the gloves

provided by Two Canoes. Like the buyer in *J.F. Daley*, whether DRE's acceptance was induced

by the difficulty of discovery or should have been discovered is a question of fact that cannot be

determined by being alleged in a motion to dismiss. *See J.F. Daley*, 849 S.W.2d at 264.

Likewise, in a similar matter under Minnesota law, the Eighth Circuit held "it is

established that '[a] buyer['s] . . . right to rescind a sale of goods upon grounds of fraud . . . may

be lost where the buyer either affirms the transaction with knowledge of the fraud or . . . where

the buyer fails to disaffirm the transaction within a reasonable time after discovery of the fraud, a

result variously based upon principles of waiver, laches, or estoppel." *Hutchinson Utilities Comm'n of City of Hutchinson v. Curtiss-Wright Corp.*, 775 F.2d 231 (8th Cir. 1985) (citing *Hemming v. Ald, Inc.*, 279 Minn. 38, 155 N.W.2d 384, 386 (1967)). DRE maintained a right to rescind the sale of goods upon grounds of fraud because it did not affirm the transaction with knowledge of the counterfeit nature of the gloves and disaffirmed the transaction within a reasonable time after discovery of the counterfeit nature. Accordingly, DRE should not be prevented from filing UCC claims in this matter.

### B. DRE Sufficiently Alleged Breach of Warranty Claims

Two Canoes then asserts that DRE's breach of warranty claims fail because DRE "fails to identify any specific warranty Two Canoes made about its products" and because DRE "failed to identify a single instance in which it relayed [that it sought only Hongray gloves] to Two Canoes." (Motion, at 23–24). Neither assertion holds up to close scrutiny.

As support for its assertion that DRE's warranty claims should be dismissed for failure to plead, Two Canoes cites a single case in which the plaintiff "[n]ot only . . . fail[ed] to identify any statement Defendant made regarding the Products, but she also fail[ed] to identify who made the statement, and when, where, or how this alleged representation was made to Plaintiff or her physician." *Guilford v. Bos. Sci. Corp.*, No. 4:19-CV-00955-DGK, 2020 WL 1668279, at *4 (W.D. Mo. Apr. 3, 2020). Further, the plaintiff in that matter "failed to plead that [she] personally saw or read any materials in which an express warranty was made." *Id.* Even a cursory review of the Amended Complaint establishes that this matter is clearly distinguishable. As DRE asserted in the Amended Complaint, Two Canoes made express representations and warranties as to the quality and durability of the PPE Gloves as part of its negotiations with DRE, including warranties that the PPE Gloves met industry standards for composition, durability, and cleanliness." (*See* Amend. Compl. ¶ 167.) Such is sufficient to meet federal

pleading standards. *See generally Iqbal*, 556 U.S. 662.

Similarly, Plaintiff's assertion that DRE failed to properly allege that it relied on Two Canoes' representations is also without merit. Again, Plaintiff cites only one case for support that breach of express and implied warranties require plaintiff show proof of reliance for a breach of warranty claim. (Motion, at 24.). But, that language was taken from an opinion applying the *summary judgment* standard. *See Hill v. Wyeth, Inc.*, No. 4:03-CV-1526-JCH, 2007 WL 674251, at *3 (E.D. Mo. Feb. 28, 2007) ("The Court agrees that Plaintiff's claims of breach of express and implied warranties require proof of reliance . . . [u]nder these circumstances, summary judgment is appropriate on Plaintiff's claims of breach of express and implied warranties."). Unlike summary judgment, to survive a motion to dismiss a complaint must only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). That standard is easily met here, where DRE alleged: (1) it relied on representations by Two Canoes, (2) to purchase gloves manufactured by Hongray and that possessed the quality of Hongray-manufactured gloves, (3) to satisfy an order by a customer who wished to only purchase Hongray-manufactured gloves. (*See* Amend. Compl. ¶¶ 35, 44, 46, 51.)

## VI.   DRE PROPERLY PLEADED UNJUST ENRICHMENT

As an alternative pleading, DRE has alleged that Two Canoes' action gave rise to the tort of unjust enrichment. Two Canoes asserts that this claim is improper as "Plaintiff's unjust enrichment claim is based on an express contract." (Motion, at 24.)

### A.   Unjust Enrichment Claims are Appropriate in the Absence of an Express Contract

"A party is not barred from pleading unjust enrichment in the alternative to a breach of contract claim when the existence and terms of a contract are in dispute." *Meardon v. Reg.*, 994

F.3d 927, 936 (8th Cir. 2021), reh'g denied (May 26, 2021) (emphasis added) (quotations and citations omitted). Accordingly, under the case law of this circuit, DRE is not barred from pleading unjust enrichment in the alternative to its breach of contract claims. And, alternative pleadings are particularly important in matters, such as this one, where one of the parties has called into question the express nature of the parties' contract.

But, this issue aside, DRE should not be barred from asserting breach of contract claims due to the possible existence of an implied contract (as opposed to an express contract). Two Canoes admits that "[t]he gloves sold by Two Canoes came via a reputable supplier directly from Hongray . . .; [t]he gloves were sent from Hongray directly to a DHL warehouse in China . . ."; and the gloves were "[i]nspected by SGS testing services, a world renowned independent third-party testing laboratory . . . ." (Motion, at 4). Such assertions support DRE's claim that the Parties bargained for Hongray gloves. (*See* Amend. Compl. ¶ 44.) And, should evidence be presented that the express contract between the Parties was deficient, then DRE will argue that an implied-in-fact contract exists based on the conduct of the Parties. *See Farmers Edge Inc. v. Farmobile*, LLC, 970, 1031 F.3d 1027 (8th Cir. 2020) ("An implied contract is 'an agreement "implied in fact," founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding.'" (quoting *Baltimore & O.R. Co. v. United States*, 261 U.S. 592, 597 (1923)). In that alternative assertion, where DRE would argue an *implied* contract exists instead of an *express* contract, a cause of action for unjust enrichment would still be valid.

Further, Plaintiff provides inapposite authorities in arguing that DRE's equitable claim should be dismissed. In *Lowe v. Hill*, for instance, the Missouri Court of Appeals held that an unjust enrichment claim and a separate equitable claim were unavailable following a bench trial

in which the trial court determined that a contract existed between the parties. *See Lowe v. Hill*, 430 S.W.3d 346, 350 (Mo. Ct. App. 2014). The *Lowe* decision held that unjust enrichment was not an available action "because the circuit court found that a contract did in fact exist." *Id.* No such finding has occurred yet in this action. Similarly, the court in *Groh* considered only the express contract between the parties and did not consider an alternative implied contract argument. *See Groh*, 2015 WL 58461, at *3.

Since this action is still at the pleadings stage, it is necessary for DRE to assert a cause of action for unjust enrichment so that DRE is not precluded from pursuing that relief should evidence later be introduced calling the express contract into question. It is precisely for this reason that Missouri law has long established "that a party may plead claims both for breach of contract, and on equitable theories which are only available in the absence of a contract." *Steelhead Townhomes, L.L.C. v. Clearwater 2008 Note Program, LLC*, 537 S.W.3d 855, 863 (Mo. Ct. App. 2017); *see also Howard v. Turnbull*, 258 S.W.3d 73, 76 (Mo. Ct. App. 2008) (permitting Plaintiff, under Missouri law, to file a claim for "breach[ ] [of] an express contract [a]s an alternative pleading to [ ] other causes of action." (citations omitted)). Plaintiff's unjust enrichment claim falls well within this long line of case law. Accordingly, Two Canoes' Motion should also be denied to the extent it seeks to dismiss DRE's unjust enrichment claim.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint, and provide such other and further relief that the Court deems just and proper.

Respectfully Submitted By:

**JAMES SOBBA, LLC**

*/s/   G. Edgar James*_____
G. EDGAR JAMES    MO#49585
4435 Main Street, Suite 910
Kansas City, Missouri 64111
Telephone: (816) 623-0043
ejames@jamessobba.com

and

**<u>JONES DAY</u>**

Adam Wiers (*Pro Hac Vice*)
awwiers@jonesday.com
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
Tel: (312) 782-3939
Fax: (312) 782-8585

**ATTORNEYS FOR PLAINTIFF DRE
HEALTH CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The foregoing was served electronically via the Court's CM/ECF system on all counsel of record this 2nd day of September, 2022.

*/s/ G. Edgar James*_____
Attorney for Plaintiff